17-1264 and 17-1316, Donald Thomas Scholz v. Barry Goudreau. Thank you. Ms. Stenger? Good morning, Your Honor. May it please the Court. May I reserve two minutes, please? You may. Thank you. My name is Susan Stenger. I represent Appellant Donald Thomas Scholz. With me is my colleague, Loralee Middleman. Your Honor, my client has been deprived of a jury finding here. The jury was asked whether Mr. Goudreau had performed his obligations under the parties' contracts, and they answered no, he had not. However, what they specifically answered was no, he did not carry his burden of proof on his affirmative claim of proving that point. The phrasing of the question did not... Well, first, the question of the verdict form didn't incorporate the burden of proof, but the instructions incorporated the burden of proof, and the plaintiff. As plaintiff on that claim, he bore the burden of proof. So how does his failure to satisfy the burden of proof on his affirmative claim suddenly equate with your having succeeded on your client's claim to breach a contract for which he would bear the burden of proof? I understand the question. First of all, because the jury also said that Mr. Scholz did nothing to excuse Mr. Goudreau's performance, but also because when Mr. Goudreau signed that contract in 1983, he was exiting a partnership, and his only obligation going forward was not to use the name Boston except in the phrase, formerly of Boston. And that was his sole obligation. It was a material obligation of the contract, and while Massachusetts law will typically look at that as a question of fact, it is a question of law, whereas here, materiality, there's only one obligation, and that was the only evidence presented as to breach was on that obligation. It wasn't the only obligation under the contract. He gave his other obligations of consideration under that contract, running from his client, from him to your client, wasn't there. For example, didn't he have to release certain claims? He gave up rights back in 1983 as far as being part of the band, Your Honor, but that obligation ended then. Let's put it this way. If he had sued your client for one of those released claims, would you have said he had violated some obligation owed to your client? I think that's just beyond the, I'm trying to think, Your Honor, the phrase, the provision about release of claims. The provisions I remember were the things he gave up at the time, and if there was any suggestion that he didn't do that in 1983, the statute on that would have long gone. And that would be true for release of claims. I don't think there's anything that occurred in the 30 years since then that would still be viable on that. The only thing that was in play was the name, and that was the only thing at trial that there was any evidence of, most importantly, that there was evidence of breach on. It wasn't that the jury was choosing between different theories of breach. His repeated use of the name was the only one. No, but you seem to have this notion, I think, which seems to be central to the whole litigation, that if you could just prove that he violated the clause on using formally of Boston, and instead he said previously of Boston, or better yet, originally a member of original Boston, that voila, you not only establish a breach of contract for which you could recover damages, for which you'd have none given the jury finding on trademark, but you seem to think it undoes the whole contract and you can cut off the loyalty payments to him. That seems to be what's motivating this lawsuit, and that seems to be sort of a false premise. Your Honor, we did not, we would not have brought a claim forward previously instead of formally. But holding himself out as an original member is central to the lawsuit, and that was an issue when the contract was drafted and negotiated. Sure, and you want us to remand for you to pursue that breach of contract claim, but in fact you want us to enter a judgment saying that the jury finding that he didn't prevail means you prevail, and then you want to go back for what, $1 in damages? We're not looking for damages, Your Honor. We're looking for, as the law allows, as a proper remedy, his forfeiture of any future royalties under the contract. And as to the phrase original, the judge ruled that the contract was unambiguous and that he was not entitled, Mr. Goodjoy was not entitled to hold himself out as an original member of the band. Counsel, I know you'd like to get to your argument, but I have a question. Certainly. So you make a argument that the district court committed error in entering a summary judgment on your breach of contract claim, and you say that it was error for a number of reasons, but one of them was the language in the counterclaim brought by your opponent, which you say constituted an admission, and therefore there was evidence of breach of contract, and you should have been allowed to go to the jury on that point. In the counterclaim, it says Goodroy made sure that all NU's managers and others referred to Goodroy, if I'm pronouncing it correctly, as a former member of the band Boston in any biographical and other materials associated with Goodroy's performance, using, here's the operative language, the truthful and accurate descriptive designations of formerly of Boston or as an original member of Boston, and you said your complaint is about the claim that he was an original member of Boston. Okay. So after the district court granted summary judgment on the claim, you went back to the district court and said we need some clarification here because we view this as evidence that would have prevented summary judgment from being entered, and the district court said something. It's not a judicial admission, but it's evidence. But then the district court still refused to vacate the summary judgment. Okay. So it's an interesting argument, but here's my question. You were allowed to get to the jury on the trademark infringement claim, and the jury ruled against you, but it would seem to me that this evidence of what was said in the counterclaim was also pertinent to the trademark infringement claim. So I want to know whether you used this evidence at trial, because if you didn't, I'm a little concerned that any error was harmless. So what's the answer? We absolutely used it at trial, Your Honor. Okay. And the judge ruled it wasn't a judicial admission, but it could be held as an admission against interest. So then in front of the jury, you used this evidence on the trademark claim. Absolutely. And the jury rejected it. Rejected the trademark claim, yes, and also found that Mr. Goudreau didn't perform his obligations under the contract. But that was part of a constellation of things that on summary judgment should have survived summary judgment, Your Honor. There was also the judge's finding on summary judgment, ruling on summary judgment, that Mr. Goudreau was not allowed to use the phrase. I just think if you'd gotten to the jury and they rejected the trademark claim, after you put in the evidence of what the counterclaim said, that there would be a different result on the contract claim. No, the evidence approved on the contract claim was less incredible than on the trademark claim. The jury on the trademark claim, the first question they were asked was about likelihood of confusion, and they answered that in the negative. So that had nothing to do with the paragraph from the counterclaim. Okay. Can you just help me with, is there a record show of whether the opponent was in fact or not an original member of the band? Your Honor, there was a lot of evidence at trial as to what his role was in the beginning. He had no role in preparing the demo tapes that were submitted to the record company. When the record company said, yeah, we want to sign that band, they didn't sign it. Mr. Goudreau was no part of it. It was Mr. Scholes who wrote and produced and arranged and played it. Are you saying your position is he was not an original member and you have evidence to back that up? That's correct, and it's cited in my brief, Your Honor. He was not a part of the band. Is there an issue of fact in dispute whether he was an original member or not? Mr. Goudreau did dispute that at trial, but he also signed this contract in 1983 saying that he had no right to claim he was an original member. And the district court found that that contract was clear and unambiguous and restricted him to saying former member. Correct. Okay. Judge Lynch elicited some information about the motion for summary judgment on the counterclaim was denied. You then went back later after the court acknowledged that you could use the counterclaim allegation as evidence at trial. You said, well, hey, that would also suggest that the summary judgment ruling was incorrect because we have evidence of a breach there or causation. You haven't appealed the denial of the motion for reconsideration, I think. I don't consider those good bets to put your money on, Your Honor, motions for reconsideration. We did move for reconsideration of summary judgment and referred to that provision. It was actually Mr. Goudreau's motion to clarify the ruling on that paragraph. So I think if you've appealed from the denial of the motion for summary judgment, but you haven't appealed from your motion for reconsideration that you filed later, I think we have to find that what is somewhat compelling about your position on the motion for reconsideration regarding the counterclaim allegation was actually preserved and presented during the arguments on motion for summary judgment if it were to flip that. And so did you present that argument at that stage of the proceedings, the stage being the one that you're appealing from? I believe so, Your Honor. I'll have to check the transcript and I'm happy to file a letter on that point. What is the evidence you presented as to damages caused to your client by its use of the term original member of Boston rather than formerly of Boston? The remedy available under Massachusetts law, Your Honor, is his forfeiture of further royalties under the contract. That is not the question I asked. We also submitted evidence that Mr. Goudreau, a precise dollar amount of the money that he made from his work with Ernie and the Automatics, I'm not sure if I remember the number correctly, I think it's $187,000. But what are the damages your client suffered by reason of the use of the difference in language? That amount of money, Your Honor. Well, that's not damage to your client. That's you somehow have some theory for a disgorgement of profits by the other side. Those are his profits from misusing the name. But that's not damages to your client. That would be a disgorgement theory. The measure of damages to your client is what harm did your client suffer. And I think the answer to Judge Turoway's question is zero or maybe $1. I think the law entitles Mr. Schultz to remedy of forfeiture. That's not the question Judge Turoway has asked you. Let me put it this way. Was your client hurt by the fact that this fellow said original member of Boston instead of saying formerly a member of Boston? Absolutely, Your Honor. What damage did he incur? Any financial damage? I don't have a dollar amount for you, Your Honor. Did you put on any evidence of any financial damage caused by that given that the jury found there was no confusion? The only financial evidence was on Mr. Goudreau's earnings from using that money, Your Honor. But Mr. Schultz has worked a lifetime to protect this trademark and to develop it into something very meaningful. There was extensive testimony on that. And you lost on the trademark claim? We did lose on the trademark claim, Your Honor. Thank you. I see that I'm out of time. Thank you very much. Thank you. Mr. Baker, good morning. Good morning. May I have two minutes in reserve, Your Honor? Not normally, but I think you have to give all thought to your argument. Usually the other side gets the reserve. You have to make a full argument at this time. Understood. I'm here on behalf of Barry Goudreau, the appellee in this case. Your Honor, we view this case as an exceptional case under trademark law. So far as we know, there has never been a single reported case where a secondary infringer has been sued for trademark infringement, and the primary infringer has not, in fact, been sued. Did you win the trademark case? Yes, we did. But I'm arguing, Your Honor, the fee-shipping provision under 1117. In order to do so, we have to establish that it's an exceptional case, which Judge Kasper did not so find. You're now starting out. You're not responding to any of the arguments we've just made or any of the discussion. You're moving to your affirmative argument that you should have an award of attorney's fees for having been sued? The only comment that I intended to make, and I was going to do it at the end with respect to my sister's argument, is Mr. Goudreau did, in fact, present substantial evidence that he was an original member. He appeared on the original record. He signed the contract with CBS Records as a member. Yeah, but look, her theory was that 1983 settlement agreement was perfectly clear, and you could use the term formally, but you could not use the term original. So whether there was a dispute of fact on this issue sort of falls to the wayside. But I'd like to go back to Judge Keato's question. Since there's an abuse of discretion standard of review on the argument you chose to initiate, and we've been asking questions of your opponent on some sort of more basic issues, what do you have to say about our colloquy with your opposing counsel? I think that Judge Kasper was correct by denying or by granting our assembly judgment the plaintiff had to prove. Why, if there was some evidence from your, or maybe previous counsel's, inartful and worded counterclaim that used this language? Well, Judge Kasper found, and we believe correctly so, that although this inartful statement, as your Honor points out, was in fact made, it is part of the record. Yes, she said there was no other evidence to support it, but so what? Why couldn't a jury take your admission and find a breach of contract? Let me bootstrap onto your argument twofold. You didn't make any arguments. I asked questions. Your comment, Judge, is a big part. I think the questions that Judge Keato made, or asked, rather, were correct, in the fact that it's not the equivalent where the jury verdict on our counterclaim that he failed to live up to his obligations is the same as the plaintiff. You shifted to a different argument. What about Judge Keato's point that there doesn't appear to have been an appeal from the denial of the motion for reconsideration? Was there an appeal from the denial? No. The answer is no. There were three. There was an appeal from the denial of the motion to amend in the first instance, a denial of the motion to amend in the second instance, and a denial from the summary judgment, not from the motion to reconsider, as I understand the brief. And I don't have a particular view with respect to that other than I think that the logic is correct, that unless it's in the original motion for summary judgment, it's not presented in this court. In the original motion, did they argue that this admission in the counterclaim was evidence that would allow them to pursue the claim before the jury and defeat the summary judgment? I believe that they did, Your Honor. Okay. I would like to present my argument on the fee shifting, if I could. That was an abuse of discretion that we should reverse for the failure to award fees? Yes, Judge. It's our view that this is, in fact, an exceptional case. And the court did apply the standard of obtaining fitness, although we submit it was done incorrectly. Was there any error of law by the judge? Well, she applied an incomplete analysis of the factors that give rise to the obtained fitness. The judge doesn't have to review in writing every single factor. Show us what was it she said, because I didn't see it in your brief, what specific factor the judge refused to apply that she should have applied, or what specific factor the judge applied that isn't a factor. Well, she did apply the four factors, the so-called non-exclusive factors, as identified in the case law, Curt Sang, the fantasy case. But I don't think she did it correctly, Your Honor, and that's my position. So, therefore, you're in abuse of discretion review if there's no legal error. And you can't say there's legal error in that she... You just said you don't agree with how she applied the factors, but she correctly identified the factors and then she applied them. What I said, I believe, was that she identified the factors and she applied them incorrectly. That's not an issue of law. That falls within abuse of discretion. Okay, assuming that that is the standard, certainly, I still believe that the lower court abused her discretion, the judge abused her discretion, in the way in which she analyzed the fee-shifting provision. And I cite the case Mag Jewelry, which I believe is Judge Tortorella's opinion, where the court said if the analysis is incorrect, it is an abuse of discretion. If the failure to determine that the case is an exceptional case, it's an abuse of discretion. And on appeal, this court reviewed the facts of that case very carefully and came up with its own independent analysis of the facts and reversed the lower court and determined that it was, in fact, an exceptional case. And I submit that the facts of this case are similar to that case. And the reason why I say that, Judge Lynch, is because, like Mag Jewelry, we also won on most of the trademark claims at summary judgment, only two survived. And then we won on the balance of the claims at trial. And I concede, and I think that Judge Casper is, in fact, correct, simply because we won at summary judgment is not a fortiori the basis for declaring the case an exceptional case. But if you look at the facts and if you analyze the four factors, fearlessness, motivation, objective unreasonableness, and the determination of compensation and deterrence, I believe that this court would come up with a different view of what Judge Casper did. But that's not the test. That's what we're trying to get across to you, that we would come up with a different view, not suggesting that's so. But that's not the test. Well, then I submit that the court's findings were an abuse of discretion for the simple reason that we do believe this is an exceptional case, and she did not so far. Can you point to any case where a trademark claim actually was found to survive and get to a jury and was submitted to a jury, and the jury came back and picked one side or the other, particularly picked them on lack of confusion issue, and then the prevailing side was entitled to attorney's fees as a matter of law? No, I don't think that that's correct. So that's what you're actually asking us to hold on this appeal? What I'm asking the court to do is to analyze the facts anew because I believe that the error of law that the judge made was she failed to consider the totality of circumstances. The case in its entirety, all of the factors, she just considered some facts in making a decision, and it's implicit in her ruling. And I go back to the Kurtzank case, which says that the trial court, when considering the fee-shifting provision, must consider the so-called large objective of whatever particular act that the court is evaluating. In this case, it's the trademark statute. And in so doing, what is the purpose of the trademark statute? It is to prevent the wrongful use of identical or similar marks, which resulted in confusion. And in this case, again, now citing the third factor, the objective and reason was Mr. Schultz put on no competent evidence on nearly all of the factors of a trademark claim. He had no damages. He had no evidence of confusion. And again, citing the Magdula case, Your Honor, in that case the court ruled that where it is apparent to a litigant early on in the stages of the trial, or the case, I should say, excuse me, that his claim, the trademark claim, is towards at best the prolonged litigation by way of obscuring the clarity of the facts constitutes an exceptional case. And we submit that is the case here. And the court found the failure to do so is an abuse of discretion. So maybe I am right that it is in fact an abuse of discretion standard for this court to review the totality of circumstances with respect to the failure of the court to find an abuse of discretion. We can understand that your client is unhappy about the costs of the litigation having been imposed on him. But we are not the deciders in the first instance of whether he gets fees under the Copyright Act. Is there any other argument you would like to present to us? With respect to the abusive process dismissal of our client, we submit that there were issues of fact raised at summary judgment. I believe I briefed it as fully. I have briefed it fully in our original written reply memo. I simply want to add that the motivation of Mr. Schultz or his so-called state of mind is almost always a question of fact that should go to the jury. It seems to me you are mixing up malicious prosecution and abusive process. If I properly give you a summons and a complaint on a frivolous lawsuit, then perhaps I am liable for malicious prosecution. But you sued for abusive process. What was the actual misuse of the process? Judge, the stated objective of Mr. Schultz was... But let me get back to intent. I'm asking you the actus reus here. What is the misuse of the process? The request for rescission of the contract, the 1983 settlement.  That's asserting a position on a contract. Well, the process is suing Mr. Goudreau on an inherently frivolous... Which is malicious prosecution. I don't know the distinction, the differences between malicious prosecution and abusive process. Putting that aside for just a moment, I still... That is the point of your appeal. I'm sorry? That is the point of your appeal, is that you have a claim for abusive process, not the unpleaded malicious prosecution. That is correct, Judge. So I do think you need to recognize there's a difference between the two, and I don't see here any recognition of the fact that you need some misuse of the process. Our position with respect to the misuse of the process was that it was never Mr. Schultz's intent to police his mark and to sue Mr. Goudreau or anybody else, since he only named Mr. Goudreau with respect to the trademark infringement, but rather it was always his intent, his objective, his desire, to get Mr. Goudreau in a position where he simply couldn't defend the case and he would surrender his copyrights to him and all future rights to royalties. I don't have anything to add to the argument that we have set out in our brief with respect to the First Amendment issue, except I do want to emphasize to the Court that that video was played two or three times backwards and forwards, and to use the phrase, the metaphor, a picture is worth a thousand words. That video had a substantial impact. We submit that it is protected by free speech. The authenticity of the video was never established, except we didn't create it. Mr. Bott didn't create it. Some third party. Nobody knows how it got on the Internet. That was never established at trial, and it had a severely prejudicial impact on our ability to prosecute our counterclaims. Any questions? Thank you. Thank you all. Ms. Steiger. Just two points, Your Honors. On the grounds for Mr. Scholz's breach in the summary judgment motion, it wasn't based solely on the paragraph in the counterclaim. I just want to be sure that there was deposition testimony from Mr. Bott, that he did use the word original, that he put the sticker bearing that word on the front of the CDs they sold, and that banned promotional materials used it. Mr. Goudreau also testified in his deposition that he never warned Mr. Bott enough to do that, or never showed him his contract that prohibited it, that he knew it would hurt his career if he couldn't call himself an original member. He wanted to be credited for the first album, and he knew it would be good for ticket sales to put his name with Boston, original member of Boston, on the album and on the promotions. All those things taken together should have gotten Mr. Scholz over the hump of summary judgment for the inferences that could have been drawn there from. On the issue of the pop-up video that Ms. Justment mentioned, the man who made the video was a friend of Mr. Bok, who was in charge of the band. Mr. Goudreau had signed a contract to Mr. Bok saying, you have total control over promoting this band. They're all in the video, they're handing it out, they're looking at the camera, they knew it was being made. And when Mr. Bok was asked at trial, did you post this on the Internet? He said, we posted everything on the Internet. So he was responsible for that, and he was an agent with actual authority of Mr. Goudreau. So Mr. Goudreau cannot distance himself from that. And finally, I'll point out, the blurbs that are put on the bottom of that video, they are not commenting criticism protected by the Copyright Act. They are simple statements of fact about my client's band using his trademark. They are the first words that appear. There's nothing commenting on the lyrics of the song. It was simply an effort to profit from the name Boston. Thank you, Your Honor. Thank you.